**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA

v.

HASSAN NEWTON,

          Defendant.

3:24-CR-52-03

(MEHALCHICK, J.)

**<u>MEMORANDUM</u>**

Before the Court are two motions *in limine* filed by the United States of America in preparation of the upcoming trial of Defendant Hassan Newton ("Newton"). (Doc. 144; Doc. 146). The motions seek to introduce evidence of Newton's prior felony convictions and business records. (Doc. 144; Doc. 146). For the following reasons, the government's motion *in limine* relating to the prior convictions will be granted in part and denied in part, and the government's motion *in limine* relating to the business records will be granted. (Doc. 144; Doc. 146).

### I. BACKGROUND AND PROCEDURAL HISTORY

On or about May 25, 2023, state police identified a package with smuggling characteristics traveling through the postal system. (Doc. 145, at 1). After a K-9 unit investigation and obtaining a search warrant, troopers discovered methamphetamine, marihuana, and THC gummies. (Doc. 145, at 2). The government contends that through the use of a mobile tracking order, the state police performed a controlled delivery and observed former co-defendant Jazmyn Warshawsky ("Warshawsky") transporting and smuggling package to an address in Olyphant, PA. (Doc. 145, at 2). The government asserts that Former

co-defendant Jimmy Bell ("Bell") exited the address in Olyphant, PA to retrieve the package with the mobile tracker from Warshawsky's car. (Doc. 145, at 2). After a takedown order against Warshawsky and Bell and obtaining a search warrant for the Olyphant, PA address, law enforcement allegedly recovered the mobile tracker package, which contained marijuana, methamphetamine, an AK-47 style rifle, a handgun revolver, and numerous credit cards and insurance cards under Bell's name. (Doc. 145, at 3). The government alleges that a subsequent investigation of phone and financial records indicated that Newton sent the smuggling package to Bell and Warshawsky. (Doc. 145, at 3). The government charged Newton with Conspiracy to Distribute Controlled Substances in violation of 21 U.S.C. § 846. (Doc. 145, at 1).

The government filed the motions *in limine* and briefs in support on August 25, 2025. (Doc. 144; Doc. 145; Doc. 146; Doc. 147). On September 18, 2025, Newton filed a brief in opposition in response to the motion *in limine* regarding prior convictions. (Doc. 159). Newton did not submit a brief in opposition in response to the motion *in limine* regarding business convictions. A final pretrial conference is scheduled for Friday, May 29, 2026. (Doc. 226). The Court has scheduled a jury trial in this matter to begin on Monday, June 1, 2026, at 9:30 AM in Scranton, Pennsylvania. (Doc. 226).

## II.    STANDARD OF REVIEW

"The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *United States v. Tartaglione,* 228 F. Supp. 3d 402, 406 (E.D. Pa. 2017). On a motion *in limine*, a court should exclude evidence only "when the evidence is clearly inadmissible on all potential grounds." *Tartaglione,* 228 F. Supp. 3d at 406. Evidentiary rulings on motions *in limine* are subject to the

trial judge's discretion and are reviewed for an abuse of discretion. *Bernardsville Bd. of Educ. v. J.H.*, 42 F.3d 149, 161 (3d Cir. 1994). "The Court is vested with broad inherent authority to manage its cases, which carries with it the discretion and authority to rule on motions *in limine* prior to trial." *Ridolfi v. State Farm Mut. Auto. Ins. Co.*, No. 1:15-CV-859, 2017 WL 3198006, at *2 (M.D. Pa. July 27, 2017). Further, "[c]ourts may exercise this discretion in order to ensure that juries are not exposed to unfairly prejudicial, confusing or irrelevant evidence." *Ridolfi*, 2017 WL 3198006, *2. "A trial court considering a motion *in limine* may reserve judgment until trial in order to place the motion in the appropriate factual context." *Tartaglione*, 228 F. Supp. 3d at 406. "Further, a trial court's ruling on a motion *in limine* is 'subject to change when the case unfolds, particularly if actual testimony differs from what was contained in the movant's proffer.'" *Tartaglione*, 228 F. Supp. 3d at 406 (quoting *Luce v. United States*, 469 U.S. 38, 41 (1983)).

**III.    DISCUSSION**

A. MOTION *IN LIMINE*: PRIOR CONVICTIONS

The government's first motion *in limine* seeks to introduce Defendant's two prior felony convictions: (1) Manufacture, Delivery or Possession with Intent to Manufacture or Deliver a Controlled Substance, in violation of Title 35, Pennsylvania Consolidated Statute § 780-113(a)(30); and (2) Possession of a Firearm by a Prohibited Person, in violation of Title 18, Pennsylvania Consolidated Statute § 6105. (Doc. 144). Under Rule 609(a)(1)(B), evidence that a defendant has been convicted of a felony "must be admitted in a criminal case in which the witness is the defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant." Fed. R. Evid. 609(a)(1)(B); *United States v. Caldwell*, 760 F.3d 267, 286 (3d Cir. 2014). The Third Circuit has held that this rule "reflects a heightened balancing

test" with a "predisposition toward exclusion" and, that "[a]n exception [to exclusion of the evidence] is made only where the prosecution shows that the evidence makes a tangible contribution to the evaluation of credibility and that the usual high risk of unfair prejudice is not present." *Caldwell*, 760 F.3d at 286. (citation and quotations omitted). "When offering a prior conviction to impeach a testifying defendant, the government bears the burden of satisfying the heightened balancing test set out in Rule 609(a)(1)(B) [of the Federal Rules of Evidence]." *Caldwell*, 760 F.3d at 289. In considering whether probative value outweighs prejudice under Rule 609 (a)(1)(B), the Court must balance four factors known as the *Bedford* factors: "(1) the kind of crime involved; (2) when the conviction occurred; (3) the importance of the witness' testimony to the case; [and] (4) the importance of the credibility of the defendant." *Caldwell*, 760 F.3d at 286 (citing *Gov't of V.I. v. Bedford*, 671 F.2d 758, 761 n.4 (3d Cir. 1982)). The Court will consider the first *Bedford* factor for each prior felony conviction separately and the remaining factors with respect to Newton's two prior felony convictions together.

### 1. First *Bedford* Factor: Drug Trafficking Conviction

The government argues that "courts [in the Third Circuit] have determined that [drug trafficking convictions] can be admitted for impeachment purposes." (Doc. 145, at 7). Newton counters this argument by asserting that "the jury would be more prone to use it for propensity purposes[.]" (Doc. 159, at 4). In considering the first *Bedford* factor, "courts consider both the impeachment value of the prior conviction as well as its similarity to the charged crime." *Caldwell*, 760 F.3d at 286. Impeachment value refers to how probative the conviction is to the defendant's character for truthfulness. *Caldwell*, 760 F.3d at 286. "With respect to the similarity of the crime to the offense charged, the balance tilts further toward

4

exclusion as the offered impeachment evidence becomes more similar to the crime for which the defendant is being tried." *Caldwell*, 760 F.3d at 286. "'Generally, where the crime is punishable by a sentence of more than one year imprisonment, or if the crime involved a proof of a dishonest act or false statement by the witness, such evidence must be admitted for impeachment purposes.'" *United States v. Guerrier*, 511 F. Supp. 3d 556, 562 (M.D. Pa. 2021). While assessing the type of crime involved, the court must evaluate whether the prior conviction included dishonesty, false statements, or any other offense in the nature of *crimen falsi*. *See Walker v. Horn*, 385 F.3d 321, 334 (3d Cir. 2004).

The Third Circuit has held that trial courts can admit drug convictions for impeachment purposes under 609(a)(1) in a case where the defendant is charged with a drug offense. *United States v. Murphy*, 172 F. App'x 461, 463 (3d Cir. 2006). A defendant's previous conviction of drug possession with the intent to distribute is relevant to a jury's determination of the defendant's credibility. *See United States v. Borrome*, No. CRIM. 97-00224-01, 1997 WL 786436, at *4 (E.D. Pa. Dec. 3, 1997), *aff'd*, 166 F.3d 1206 (3d Cir. 1998) (recognizing that "a drug trafficker lives a life of secrecy and dissembling in the course of that activity, being prepared to say whatever is required by the demands of the moment, whether the truth or a lie."). Cases from and within the Third Circuit support a determination that a prior felony drug conviction is probative of a defendant's character for truthfulness. *United States v. Sampson*, 980 F.2d 883, 887 (3d Cir. 1992) (demonstrating that "drug convictions are admissible in a trial where the defendant is charged with a drug offense"); *United States v. Carey*, No. 3-CR-18-037, 2019 WL 6492566, at *6 (M.D. Pa. Dec. 3, 2019) ("The court concurs with the government and finds that Carey's March 2009 drug trafficking conviction is also admissible for impeachment purposes if he testifies at trial despite its similarity to the

drug offenses he is charged with in the instant case."); *United States v. Johnson*, No. CR 3:21-143, 2022 WL 2835955, at *5 (M.D. Pa. July 20, 2022) (determining that prior felony drug convictions had probative value in relation to defendant's character for veracity when analyzing the first *Bedford* factor); *See United States v. Santiago-Riviera*, No. 3-CR-17-006, 2017 WL 4551039, at *7 (M.D. Pa. Oct. 12, 2017), *aff'd*, 848 F. App'x 504 (3d Cir. 2021) (holding that felony narcotics convictions can be used to impeach a defendant's credibility if he testifies). Here, the Court finds that the first factor weighs in favor of admitting Newton's prior felony drug conviction for impeachment purposes should Newton testify at trial.

### 2. First *Bedford* Factor: Firearm Conviction

The Court now analyzes the first *Bedford* factor regarding the firearm conviction. The government contends that a firearm conviction has been found to be probative of truthfulness.[1] (Doc. 145, at 6). Newton argues that the impeachment value of this crime is low and that it does not relate to truthfulness, honesty, or deception. (Doc. 159, at 2). "[U]nlawful firearms convictions do not, by their nature, imply a dishonest act." *Caldwell*, 760 F.3d at 289. The Court does not see any relation between the firearm conviction and Newton's veracity as a witness because, aside from the seriousness of unlawful possession of a firearm, a person can commit such crime without deceit or dishonesty. *United States v. Holmes*, 714 F. Supp. 3d 523, 526 (E.D. Pa. Feb. 2, 2024) (finding no "inherently strong or logical connection" between defendant's prior firearms offense and his veracity as a witness); see *United States v. Gillard*, No. 23-CR-00026, 2024 WL 247054, at *9 (E.D. Pa. Jan. 23, 2024) (noting that neither defendant's prior firearms convictions nor his possession of an instrument of crime conviction

---

[1] The government does not explicitly refer to this prior offense as a firearm conviction when analyzing the first *Bedford* factor. (Doc. 145, at 5-9).

has a meaningful effect on one's character for truthfulness). There are no details that demonstrate how this conviction would impact Newton's willingness to testify truthfully. (Doc. 145, at 5-6); *see Holmes*, 714 F. Supp. 3d at 526 (citation omitted). The Court finds that the firearm conviction has no impeachment value for purposes of the first *Bedford* factor. With respect to the similarity between the firearm conviction and the charged crime, they are not similar enough for "the balance tilt[] further toward exclusion." *Caldwell*, 760 F.3d at 286. Thus, in determining that the government did not meet its burden in satisfying the heightened balancing test set out in Rule 609(a)(1)(B), the Court finds that the first *Bedford* weighs in favor of not admitting the firearm conviction. *Caldwell*, 760 F.3d at 289.

### 3. Second *Bedford* Factor

The second *Bedford* factor analyzes when the conviction occurred. *Caldwell*, 760 F.3d at 287. The government argues that Newton's prior convictions and releases from prison both fall within the ten-year "look back" period. (Doc. 145, at 11). In response, Newton argues that his prior convictions occurred far in his past and that he lives a "law abiding life," (Doc. 159, at 2, 4).

"A conviction over ten years old (measured from the date of conviction or release from confinement for the conviction, whichever is later), is generally not admissible 'unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantial outweighs its prejudicial effect.'" *United States v. Jessamy*, 464 F. Supp. 3d 671, 674 (M.D. Pa. 2020) (citing Fed. R. Evid. 609(b)). Thus, convictions over ten years old are only to be admitted in exceptional

circumstances and the balancing test under Rule 403 is reversed.[2] *See United States v. Guerrier,*
*511 F. Supp. 3d 556, 565 (M.D. Pa. Jan. 6, 2021)* (citation omitted). "The age of a conviction
may weigh particularly in favor of exclusion 'where other circumstances combine with the
passage of time to suggest a changed character.'" *Caldwell,* 760 F.3d at 287.

Pursuant to the ten-year "look back" period set forth in Rule 609(b) of the Federal
Rules of Evidence, the second Bedford factor weighs in favor of admitting Newton's prior
convictions. On November 9, 2012, Newton was convicted of the drug trafficking offense, but
due to post-release violations requiring resentencing and further imprisonment, he was last
resentenced on November 9, 2016. (Doc. 145, at 3-4). On that same date, Newton was
sentenced on the firearm conviction. (Doc. 145, at 4). This date falls within the "look-back"
period. The Court finds that the second *Bedford* factor weighs in favor of admitting both prior
convictions. *See Caldwell,* 760 F.3d at 287 ("[T]he probative value of an older conviction may
remain undiminished if the defendant was recently released from confinement or has multiple
intervening convictions, both of which could suggest that his character has not improved.");
*see also Guerrier,* 511 F. Supp. 3d at 565 (noting in 2021 that because defendant did not
abandon "his prior ways of criminal behavior" since his 2003 convictions, the court found
probative value for impeachment purposes); *see also Jessamy,* 464 F. Supp. 3d at 676 (admitting
both convictions of defendant since the dates of release from confinement occurred within ten
years of the trial court's decision).

### 4. Third *Bedford* Factor

---

[2] "Whereas under Rule 403 unfair prejudice must substantially outweigh the evidence's probative value, for convictions over ten years old, the probative value of the conviction must substantially outweigh the prejudicial effect."

The third *Bedford* factor relates to the importance of the defendant's testimony to his defense at trial. *Caldwell*, 760 F.3d at 287. According to the government, Newton's testimony will set up a credibility contest between his and the government's witnesses. (Doc. 145, at 13). The government further argues that "[t]he jury will be asked to choose between the defendant's version of events and that provided by the government. The credibility of these witnesses, therefore, will be crucial to establishing the government's case, as well as the defendant's defense." (Doc. 145, at 13). Newton argues that "[h]e needs to testify in this case to succeed."[3] (Doc. 159, at 3).

"If it is apparent to the trial court that the accused must testify to refute strong prosecution evidence, then the court should consider whether, by permitting conviction impeachment, the court in effect prevents the accused from testifying." *Caldwell*, 760 F.3d at 287. If a defendant's testimony is important to his defense, this factor weighs against admitting a prior conviction. *See Caldwell*, 760 F.3d at 287-88.

Here, Newton represents that he intends to testify because his testimony is essential to his defense. (Doc. 159, at 3); *see Guerrier*, 511 F. Supp. 3d at 565 (finding that defendant's testimony could be important as "the jury [would] be asked to choose between the defendant's version of events and that provided by the government's witnesses"); *see also Jessamy*, 464 F. Supp. 3d at 676 (finding that the third Bedford factor weighs against admissibility because defendant's testimony will be important in refuting the government's "strong" evidence). As the government argues that Newton will testify about "'matters that are pivotal to the charges,'" this implicates the importance of Newton's testimony. (Doc. 145, at 13). Thus, the

---

[3] Newton asserts that his testimony is "very important" to his case regarding both prior felony convictions, even though it is not explicitly stated in the brief in opposition. (Doc. 159, at 4).

Court finds that the third *Bedford* factor weighs in favor of excluding both prior convictions. *See Holmes*, 714 F. Supp. 3d at 527 (recognizing that a defendant's testimony weighed in favor of excluding evidence so as not to prevent him from testifying his own defense).

### 5. Fourth *Bedford* Factor

The fourth *Bedford* factor focuses on the importance of the defendant's credibility. *Caldwell*, 760 F.3d at 288. The government contends that Newton's credibility would be "crucial" to establishing his defense in a credibility contest. (Doc. 145, at 13). Merging his arguments for the third and fourth factors, Newton asserts that "[h]is guilt or innocence may come down largely to his testimony." (Doc. 159, at 3).

Although this factor may weigh in favor of admission, the third and fourth factor tend to "cancel each other out," thus hindering "either factor from impacting the overall impeachment calculus." *Holmes*, 714 F. Supp. 3d at 527 (citations and internal quotations omitted). "If a defendant testifies, he places his credibility directly at issue." *Guerrier*, 511 F. Supp. 3d at 566 (citing *United States v. Beros*, 833 F.2d 455, 463-64 (3d Cir. 1987); see *Jessamy*, 464 F. Supp. 3d at 677; *see also Seawright v. Banning*, 677 F. Supp. 3d 310, 315 (E.D. Pa. 2023). "If a defendant's credibility as to non-trivial matters is a central issue in his defense, that weighs in favor of inclusion of the prior conviction." *Holmes*, 714 F. Supp. 3d at 527 (citing *Caldwell*, 760 F.3d at 288). "Where a case is reduced to a swearing contest between witnesses, the probative value of conviction is increased." *Caldwell*, 760 F.3d at 288 (citation and internal quotations omitted).

Here, as the government submits, if Newton elects to testify at trial, then "the jury will be asked to choose between the defendant's version of events and that provided by the government." (Doc. 145, at 13). With that, Newton's convictions will have relevance in the

jury's decision. The Court, therefore, finds that the fourth *Bedford* factor weighs in favor of admitting Newton's prior convictions. *see Guerrier*, 511 F. Supp. 3d at 566 (finding that the fourth *Bedford* factor weighed in favor of admissibility because "all of the witnesses credibility will be crucial" to both parties' cases); *see also Jessamy*, 464 F. Supp. 3d at 677 (In light of the choice the jury will have to make regarding credibility, Jessamy's convictions are particularly relevant.").

### 6.    Balancing the *Bedford* Factors

As to the drug trafficking conviction, three of the four Bedford factors weigh in favor of allowing the government to use the prior conviction to impeach Newton if he testifies at trial. The Court finds that the government met its burden of showing that the probative value of Newton's drug trafficking conviction outweighs its prejudicial effect under Rule 609(a)(1)(B). Fed. R. Evid. 609(a)(1)(B). On the other hand, the government did not meet the 609(a)(1)(B) burden regarding the firearm conviction. Thus, the government cannot use the firearm conviction to impeach Newton. Accordingly, the government's motion *in limine* to admit Newton's prior convictions is **GRANTED in part** and **DENIED in part**. (Doc. 144).[4]

B.   MOTION *IN LIMINE*: BUSINESS RECORDS

The government moves to admit digital business records provided by Block, Inc. ("Block") related to accounts with Block created by Newtown and Bell pursuant to Federal Rules of Evidence 902(11) and 803(6), without the need of a business representative's live testimony to authenticate the records. (Doc. 146). Newton did not file a brief in opposition to

---

[4] This ruling is without prejudice to the government revisiting the issue should circumstances or evidence change at the time of trial.

this motion. The government submits that the records satisfy the requirements for self-authenticating under Rule 902(11) and admissibility under 803(6). (Doc. 147, at 3).

Federal Rule of Evidence 803(6) allows a part to admit "[r]ecords of a [r]egularly [c]onducted [a]ctivity." Under Rule 803 (6) such a record is admissible if:

> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.
>
> Fed. R. Evid. 803(6).

Courts in the Third Circuit have found that business records kept by reputable businesses, kept under the circumstances outlined in Rule 803(6), and certified in accordance with Rule 902, are generally admissible. *See United States v. Browne*, 834 F.3d 403, 409 (3d Cir. 2016) (finding business records kept by Facebook in relation to a defendant's account admissible); *see also United States v. Totoro*, No. CR 15-291, 2017 WL 3189216, at *9 (E.D. Pa. July 27, 2017) (finding that business records kept by AT&T admissible). The government represents that Block's records are kept in accordance with the requirements of Rule 803(6) and provides a certification in accordance with Rule 902(11). (Doc. 147, at 1; Doc. 147-1). Newton does not challenge the government's representations. Accordingly, the government's motion *in limine* to admit business records from Block is **GRANTED**. (Doc. 146).

IV.    CONCLUSION

For the foregoing reasons, the government's motion *in limine* to introduce evidence of Newton's prior felony convictions for impeachment purposes if he testifies at trial is **GRANTED in part** and **DENIED in part**. (Doc. 144). The government may introduce evidence of Defendant's drug trafficking conviction for impeachment purposes only. The government may not introduce evidence of Defendant's firearm possession because it failed to meet its burden of showing that the probative value outweighs its prejudicial effect under Rule 609(a)(1)(B). (Doc. 145). The government's motion *in limine* to introduce evidence of business records is **GRANTED**. (Doc. 146).

An appropriate Order follows.

BY THE COURT:

Dated: May 14, 2026                    *s/ Karoline Mehalchick*
                                       **KAROLINE MEHALCHICK**
                                       **United States District Judge**

13